EASTERN BANKING COMPANY, APPELLANT, V. JOHN H.
LOVEJOY ET AL., APPELLEES.

FILED MARCH 19, 1908. No. 15,091.

**Quieting Title: LIMITATION OF ACTIONS.** One Brandenbury preempted
government land, made final proof before the clerk of the district
court November 5, 1885, but such proof and the money to pay
for the land was not filed in the local land office until January 5,
1886, when a final receipt was issued and delivered to him. At
the time of filing his proof Brandenbury filed an affidavit, of
date December 16, 1885, that he had not alienated the land. This
affidavit was probably overlooked by the officers of the general
land office, as they notified the local office in August, 1889, to
require Brandenbury to furnish proof of nonalienation between
the date of making final proof and the date of his final receipt.
It is claimed that Brandenbury never received the notice issued
by the local office, and in January, 1890, Brandenbury's entry
was canceled by the general land office. September 13, 1894,
George C. Lovejoy entered the land as a homestead, made final
proof, and received his final receipts October 25, 1889, and a
patent for the land March 26, 1900. He died in September, 1900,
and his father and only heir at law took and held possession.
On February 11, 1905, the plaintiff, claiming title to the land
through foreclosure of a mortgage made by Brandenbury after
receiving his final receipt, brought an action to quiet its title.
*Held,* That, if Brandenbury, after receiving his final receipt, held
title to the land, he and his mortgagee were in position to main-
tain an action for possession or to quiet title at any time since
September, 1894, when Lovejoy entered the same as a home-
stead, and the action is barred by limitation; that, if his final
receipt did not vest him with title to the land, the land depart-
ment had jurisdiction to cancel his entry, and relief should have
been asked from that department after Lovejoy's entry on the
land.

APPEAL from the district court for Custer county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*R. A. Moore,* for appellant.

*C. L. Gutterson* and *Sullivan & Squires, contra.*

DUFFIE, C.

The plaintiff brought this action to quiet his title to 160
acres of land in Custer county. In April, 1884, James H.

Brandenbúry entered upon this land as a preemption. After living on the land something over a year he determined to commute his entry, and made application to make final proof of his occupancy and improvements thereon, and notice was given that such proof would be made before the clerk of the district court for Custer county, at Broken Bow, on November 7, 1885. On that date he made his final proof before the clerk, but such proof and the money to enter the land was not forwarded immediately and was not received at the United States land office in Grand Island until January 5, 1886, on which date a final receipt, showing entry and payment of said land by Brandenbury, was issued by the officers of the Grand Island land office. January 13, 1886, Brandenbury and his wife executed a mortgage on the land, which mortgage was afterwards foreclosed, and the sheriff's deed issued to A. S. Richards on November 23, 1889. This deed, issued on the foreclosure proceedings, was recorded in Custer county in February, 1890, and thereafter the grantee in said sheriff's deed conveyed the land, and by one or more mesne conveyances the plaintiff herein now claims title to the land. In August, 1889, the general land office at Washington notified the local office at Grand Island to require Brandenbury to furnish proof that he had not alienated the land in question between the time he made proof before the clerk of the district court for Custer county and the date of his final certificate. September 23, 1889, the officers of the local office at Grand Island reported to the general land office that notice had been given to Brandenbury to furnish such proof on August 15, 1889. It will be observed that the local officers reported they notified Brandenbury on August 15, some 15 days prior to the direction received from the general land office to have such notice served, a fact upon which stress is placed as showing that Brandenbury never had notice. October 22, 1899, Brandenbury's entry was held for cancelation by the general land office for failure to

furnish proof of nonalienation, and January 17, 1890, the local land office reported to the general land office that notice had been given Brandenbury that his entry of the land was held for cancelation.  January 30, 1890, the general land office canceled Brandenbury's entry.  March 24, 1891, the land was entered as a homestead by Frank Lovejoy.  September 13, 1894, Frank Lovejoy relinquished his homestead entry, and on the same date George C. Lovejoy entered the land as a homestead.  October 28, 1899, George C. Lovejoy made final proof before the land office at Broken Bow, and a final homestead certificate was issued to him, and thereafter, and on March 26, 1900, he received a patent for said land from the general government.  September 6, 1900, George C. Lovejoy died, and John H. Lovejoy, his father and only heir at law, took possession of the land, and now holds possession, claiming to to be the fee owner thereof.

This action was brought by the plaintiff on the 11th of February, 1905, and one of the defenses urged against the suit is adverse possession by the defendant and those through whom he claims title for more than ten years prior to the commencement of this action.  It is insisted by the plaintiff that when Brandenbury, the original preemptor, made final proof, paid for the land, and received his final certificate, he was vested with title which could not be annulled without notice to him, and that no notice was ever given him of the action of the general land office requiring him to furnish proof of nonalienation of the land between the date of his final proof and the date when such proof and the money to enter the land was received at the local office in Grand Island and his final certificate issued.  Such proof, under the rules of the department, might be, by affidavit, made by the entryman himself, and it is further insisted, and the record seems to bear out the contention, that such affidavit was furnished at the time proof was filed, it being sworn to December 16, 1885, and filed in the Grand Island office January 5, 1886.  However

this may be, there are two propositions involved in this case which, in our judgment, are fatal to the plaintiff's claim. If it be true, as plaintiff insists, that Brandenbury was invested with complete title to the land when he paid his money and received his final receipt, then he and the plaintiff, who claims through him, stood in position to maintain an action of ejectment or a suit to quiet its title when the defendant and those through whom he claims first entered into possession. If, as insisted, Brandenbury was entitled to a patent from the time of making proof and payment for the land, then on the authority of *Dolen v. Black*, 48 Neb. 688, the statute of limitation commenced to run as early as 1894, when George C. Lovejoy, the son of the defendant, entered possession of the land claiming it as his homestead. In the case cited it is said: "The statute of limitations will begin to run against the title of a party purchasing lands from the United States from the date of his compliance with all the requisites to entitle him to a patent therefor in favor of one who holds adverse possession of the real estate." In the late case of *Iowa Railroad Land Co. v. Blumer*, 206 U. S. 482, it is said: "Although one who in good faith enters and occupies lands within the place limits of a railway grant *in præsenti* may not obtain any adverse title against the government, if, as in this case, his possession is open, notorious, continuous and adverse, it may, if the railway company' fails to assert its rights, ripen into full title as against the latter, notwithstanding the entry in the land office was canceled without notice as having been improperly made and allowed," On the other hand, if Brandenbury's title was not complete at the date of his final certificate, and the general land office still retained jurisdiction to cancel his entry, such cancelation has been made, and, no appeal having been taken therefrom, his right to the land has been extinguished.

The rules of the general land office provide for giving notice to parties interested in land entries by registered

letter. A registered letter addressed to Brandenbury, at
Sargent, notifying him of the action of the general land
office, was returned uncalled for. The disposition of the
public lands of the United States is vested in the officers
of the general land office, and they may make such reason-
able rules relating to the administration of the laws of the
United States regulating the disposition of the public
lands as they see fit, and the courts have no authority to
interfere. Before an alience of a grantor of public lands
is entitled to notice of proceedings against his grantor,
he must give notice to the local land office of his interest
in the land. In *In re Hill,* 5 Land Dec. Dep. Int. 276,
the secretary of the interior held: "In the case under
consideration, there was nothing in the record to show
that Hill had mortgaged the tract in question; and it was
no part of the duty of the United States officers to search
the records in the proper territorial office to ascertain
whether any transfer of said land had been made or lien
placed thereon by him, in order to send notice of the re-
jection of the final proof to such transferee or lienor." In
*In re American Investment Co.,* 5 Land Dec. Dep. Int.
603, the practice of permitting notice of transfer to be
given the local office was approved, and in that case the
secretary said: "If the entry is held for cancelation, no-
tice should always be given to an assignee or mortgagee,
if the fact of such interest is known, who will then be al-
lowed to intervene to sustain the validity of the entry by
disclosing under oath the nature of their interest and
making proof thereof as required by rule 102." In *In re
Waterhouse,* 9 Land Dec. Dep. Int. 131, it is said: "If
parties fail to notify the local officers of the acquisition
of an interest in entered lands, after proof, and before
patent, they can blame no one but themselves if notice is
not given to them of proceedings involving said lands; it
being out of all reason to require those officers to examine
the records of the county offices to ascertain if any as-
signment of or incumbrance upon said land has been

therein recorded, before notice shall be issued for contest or hearing."

We conclude, therefore, that, if Brandenbury was entitled to a patent upon receiving his final certificate, he and his mortgagee were in position to bring an action to assert their title as against the adverse claim of Lovejoy, the homesteader, and that the homesteader has acquired title by adverse possession. If, on the other hand, Brandenbury's title was inchoate and still within the jurisdiction of the general land office to deal with, he should have applied to that office for relief and for reinstatement of his entry when Lovejoy took possession of the land as a homestead.

We recommend an affirmance of the decree of the district court.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons above given, the decree of the district court is

AFFIRMED.